UNITED STATES DISTRICT COURT
EASTERN DISTR'CT OF MICHIGAN

**UNITED STATES OF AMERICA**

Case No.  2:25-cr-20612
Judge Mark A. Goldsmith
Mag Elizabeth A. Stafford

**v.**

**HAYDAR AL HAYDARI, KARAR ALNAKASH**
**ABBAS AL OTHMAN, MOHAMMED AL HILO**
**MOUSTAPHA AL FETLAWI. TERRILL DAVIS**
**DAVID R. WILLIAMS. MOHAMMED AL ABBOOD**

---

### DEFENDANT AAL OTHMAN'S MOTION TO VACATE ORDER OF DETENTION AND REINSTATE HIS PRETRIAL RELEASE

Now Comes Defendant Abbas Al Othman, by and through counsel Frank G. Becker, respectfully requests that this Honorable Court vacate the order of detention and reinstate his pretrial release, including home confinement with GPS tether monitoring, following his immediate release from the Livingston County Jail. In support of this Motion, Defendant states as follows:

1.	The purpose of bonding is to reasonably assure a defendant's appearance and the safety of the community, while imposing the least restrictive conditions necessary to achieve those objectives under governing bond principles and the Bail Reform Act.

2.	Bond is especially appropriate where the Defendant can demonstrate strong monitoring conditions, lack of flight risk, and circumstances showing that detention is not necessary to protect the public or secure future appearances. Here Defendant

is a devoted husband and the father of three children who are still in grade school. His wife and children deeply miss their husband and father, and the family is suffering emotionally from his absence from the home. His wife and children are also experiencing depression and ongoing distress because of his detention, and they remain deeply concerned about his deteriorating health and his ability to receive proper care while incarcerated.

3. Defendant is one of several individuals charged in an Indictment relating to a conspiracy to transport stolen vehicles in violation of 18 U.S.C. §§ 371 and 2312.

4. Defendant was previously granted pretrial release on an unsecured bond with conditions that included strict location monitoring by GPS tether.

5. On February 26, 2026, United States Magistrate Judge Anthony P. Patti entered an Order revoking Defendant's bond based on an allegation that Defendant violated conditions by "arranging for and coordinating the transportation of stolen vehicles" while on release.

6. Defendant categorically denies those allegations and asserts that the government's theory of new criminal activity is logistically and physically impossible given the strict electronic monitoring and geographic restrictions of his bond.

7. The Indictment defines the "Smuggler" role attributed to Mr. Al Othman as a site-specific, hands-on occupation requiring physical presence at four specific commercial and industrial lots in Detroit: Greenfield Road, Fullerton Avenue, Tireman Avenue, and Nelson Street.

8. Because Defendant was confined to his residence and adjacent garage under a GPS-monitored inclusion zone, he could not have traveled to those industrial hubs to "coordinate precise arrivals," "pay brokers," or "pack containers" without triggering an immediate alert, and no such alerts occurred.

9.      The regulatory and practical process of international shipping begins with booking and number assignment, where a broker or shipper coordinates with an ocean carrier to rent a container and the carrier assigns a unique container number, followed by container drop-off at a private staging lot or warehouse.

10.     In the Detroit investigation, the smugglers allegedly utilized private industrial lots to pack stolen luxury vehicles, often using scrap metal or household goods as dunnage to conceal the cars. Immediately after loading, the shipper seals the container with a high-security lead or metal bolt seal. Defendant was never traced to any such lots or another location where this could have been accomplished.

11.     The documentation process requires creation of a packing list and bill of lading to declare the contents to the broker, carrier, and U.S. Customs. During transport to port, a truck driver picks up the sealed container and, under applicable transportation regulations, must ensure the container is properly secured but is legally prohibited from breaking the seal to verify contents. Federal filing then requires a licensed freight forwarder or broker to use the shipper's information to file through the Automated Export System to obtain an Internal Transaction Number.

12.     Defendant suffers from severe physical injuries and chronic pain, documented by Dr. Eqdam Radhi, M.D., and further confirmed by clinical evaluations showing a 70% disability rating, which precludes the labor-intensive process of container loading.

13.     Critically, the process of obtaining official container numbers and securing cargo space requires a professional relationship with licensed brokers and carriers that Defendant simply does not possess.

14.     Reinstating GPS tether monitoring would provide rigorous, continuous supervision while allowing Defendant to obtain necessary medical care, and it would remain a less restrictive alternative than detention.

**WHEREFORE** Defendant, Abbas Al Othman respectfully requests that this Honorable Court vacate the order of detention and reinstate his pretrial release, including home confinement with GPS tether monitoring, following his immediate release from the Livingston County Jail. And take such other actions that are necessary and appropriate given this Defendant's medical condition.

Respectfully submitted,

/S/ Frank G. Becker
Frank G. Becker (P25502)
Attorney for Defendant
18501 West Ten Mile Road
Southfield, Michigan 48075
(248) 789-2437
frankgbecker@yahoo.com

Dated: April 9, 2026

4

UNITED STATES DISTRICT COURT
EASTERN DISTR'CT OF MICHIGAN

UNITED STATES OF AMERICA

Case No. 2:25-cr-20612
Judge Mark A. Goldsmith
Mag Elizabeth A. Stafford

v.

HAYDAR AL HAYDARI, KARAR ALNAKASH
ABBAS AL OTHMAN, MOHAMMED AL HILO
MOUSTAPHA AL FETLAWI. TERRILL DAVIS
DAVID R. WILLIAMS. MOHAMMED AL ABBOOD

---

## BRIEF IN SUPPORT OF MOTION FOR RELEASE

**Statement of Facts**

The government alleges that Mr. Al Othman facilitated illegal vehicle shipments while on bond, but the government's own Indictment confirms that the charged conspiracy relied on a manner and means incompatible with home confinement. The alleged operation required smugglers to be physically present at specific staging lots to coordinate the precise arrival of stolen vehicles with shipping containers, and the smugglers were further alleged to be responsible for physically packing vehicles into 40-foot containers and paying car thieves upon delivery at those lots. During the period of release, Mr. Al Othman was wearing a federal GPS tether that monitored his location continuously, confirming that he worked exclusively from his residence and never entered the exclusion zones of the four industrial lots identified as the conspiracy's hubs.

These logistical impossibilities are reinforced by Defendant's debilitating medical condition and by the complex regulatory requirements of international

5

shipping. Abbas Al Othman is a 42-year-old male who was involved in a motor vehicle accident on July 6, 2025, sustaining significant injuries including head trauma, bilateral shoulder contusions, and a right knee fracture. He was diagnosed with a closed fracture of the right tibial plateau, and MRI imaging revealed a minimally depressed medial tibial plateau fracture with significant surrounding marrow edema.

His functional capacity is severely limited, as evidenced by an Oswestry Disability Index score of 70%, indicating that he is unable to stand due to pain and is restricted to lifting only very light weights. In addition, an evaluation on April 2, 2026, identified an abdominal wall hernia requiring further surgical management, and Dr. Radhi has stated that any interruption of care at this stage may negatively impact recovery and lead to permanent complications. (Medical Records will be provided to the Court and Prosecution upon agreement of confidentiality)

The alleged evidence supporting a probation violation is incredibly weak and the intercepted phone call was not inculpatory. The "evidence" is based on a totally unproven assumption that Mr. Al Othman knew the contents of a Trailor that was never owned, possessed, seen, loaded, sealed or shipped by him.

Beyond Defendant's noninvolvement from this shipment and physical incapacity, the shipping process itself presents a regulatory barrier Defendant could not possibly engender. International container shipping requires electronic filing into the Automated Export System to generate an Internal Transaction Number, a process generally restricted to licensed freight forwarders or authorized agents. Each shipment is assigned a unique container number generated through the carrier's system, and those numbers are official identifiers rather than fabricated placeholders.

To manage those logistics, a shipper must maintain a professional relationship with an Ocean Transportation Intermediary, yet Mr. Al Othman has no

6

relationship with any licensed brokers, and no brokers have been indicted in this specific $35 million case. According to the investigation, the smuggling ring utilized individuals who acted as their own paperwork experts to falsify federal export documents, making it logistically implausible for a man who was both physically immobile and electronically tethered to a residential garage to coordinate the professional filings or container-number substitutions allegedly required to deceive federal authorities.

**A. Bond Principles Favor Reinstatement Because the Existing Conditions Already Address Appearance and Safety.**

The governing principles of bond require the Court to impose the least restrictive conditions necessary to reasonably assure appearance and protect the public. The recognized factors bearing on bond include criminal history, record of appearance or nonappearance, community ties, substance-abuse history, mental condition, dangerousness, and the seriousness of the offense. Here, continued GPS monitoring directly addresses those concerns because it provides continuous location supervision while sharply reducing any realistic risk of nonappearance or unlawful movement outside the approved zone.

**B Defendant's Family Circumstances Further Support Reinstatement of Bond.**

Courts evaluating bonding and conditions of release may consider the defendant's ties to the community and the stabilizing effect of close family relationships when determining whether release conditions can reasonably assure appearance and safety. Mr. Al Othman's devoted wife, his three grade-school children, and the emotional harm now being suffered within the household all reinforce that he has strong and meaningful ties to home, family, and community. Those circumstances do not replace the statutory factors, but they strongly support the conclusion that structured home confinement would promote stability, accountability, and compliance with every condition this Court may impose.

**C  Compelling Medical Necessity Especially a Deteriorating Further Supports Release Under 18 U.S.C. § 3142(i).**

Defendant's chronic pain, orthopedic injuries, and abdominal wall hernia constitute a compelling reason supporting release under *18 U.S.C. § 3142(i).* Section 3142 recognizes medical treatment as a condition of release, and federal courts have repeatedly acknowledged that serious medical needs may bear directly on detention and release decisions, especially where continuity of treatment is at risk. Pretrial detainees also have a constitutional right to adequate medical care for serious medical needs. Dr. Radhi has documented that the Livingston County Jail is not an appropriate setting for the specialized orthopedic care and hernia evaluation Defendant requires, and continued detention threatens to interrupt care in a way that may negatively affect recovery and cause permanent complications. Reinstated home confinement with GPS monitoring would preserve public safety while allowing medically necessary continuity of treatment.

**C. The Alleged Violation Is Contradicted by a Digital Alibi and by Regulatory Impossibility.**

Federal GPS monitoring creates a continuous digital record, and the conduct alleged by the government is not merely clerical or remote in nature; it requires physical coordination and loading activity at specific industrial sites. GPS records confirm that Defendant remained within his residential inclusion zone, miles away from the staging lots on Tireman, Greenfield, Fullerton, and Nelson. In addition, an individual cannot independently secure space on a cargo ship or complete AES and ITN filings without access to licensed intermediaries, and no such relationship exists between Mr. Al Othman and the professional shipping community. Because container numbers are officially assigned and traceable through carrier systems, the government's theory is further undermined by the absence of the professional access necessary to accomplish what is alleged.

8

**D. Reinstatement of Bond Is Appropriate Under the Bail Reform Act.**

The Bail Reform Act mandates release on the least restrictive conditions that will reasonably assure the appearance of the person and the safety of the community. Defendant does not present a danger to the community in light of his severe physical limitations, including a 70% disability rating and reliance on crutches, which undercut the government's theory that he could engage in the demanding conduct alleged. He also does not present a meaningful risk of flight because GPS tether monitoring provides close, ongoing supervision and creates an immediate mechanism for enforcement if any unauthorized movement occurs.

### Conclusion

Mr. Al Othman's continued detention is not necessary to protect the community or secure his appearance. The existing record shows the opposite: the alleged violation is contradicted by his GPS-monitored confinement, by the physical limitations imposed by his serious medical condition, and by the regulatory realities of the shipping process described in the Indictment itself. The law requires the least restrictive conditions sufficient to address appearance and safety, not detention where strict monitoring can fully serve those purposes. Under these circumstances, reinstatement of pretrial release with GPS tether monitoring is not merely permissible; it is the most reasonable, measured, and legally sound result.

**WHEREFORE**, Defendant ABBAS AL OTHMAN respectfully requests that this Honorable Court enter an Order vacating the detention order and immediately reinstating his prior conditions of pretrial release, including home confinement with GPS tether monitoring, together with any other condition this Court deems just and proper to reasonably assure appearance, protect the community, provide treatment so that he will remain alive and recover and protect the integrity of his family unit

and the extreme pain incurred by his family. And that this Court take such other actions that are deemed just and in the interests of justice.

Respectfully submitted,

/S/ Frank G. Becker_____
Frank G. Becker (P25502)
Attorney for Defendant
18501 West Ten Mile Road
Southfield, Michigan 48075
(248) 789-2437
frankgbecker@yahoo.com

Dated: April 9, 2026

### CERTIFICATE OF SERVICE

I, Frank G. Becker, certify that on April 10, 2026, I filed and served a copy of the attached Motion and Brief to Court and Counsel via this Court ECF Court accepted filing system to all Parties and other designated persons

/s/ Frank G. Becker__
Frank G. Becker

10